UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ARTHUR JOHNSON,

                Plaintiff,

     v.

JO ANNE B. BARNHART, Commissioner,
Social Security Administration,

            Defendant.

CASE NO.     C05-5813RJB

REPORT AND
RECOMMENDATION

Noted for September 22, 2006

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Arthur Johnson, was born in 1959 and was 44 years old on the date of the administration's final decision. He obtained a high school education, completed one year of college, and completed electronics assembly training. He has past relevant work experience as a construction company owner and as a carpenter. He has not worked since January 1993, when he was carrying an air compressor down a ladder and he slipped off the last rung, causing injury to his neck.

Plaintiff filed his application for Supplemental Security Income disability benefits on June 16, 2000 (Tr. 91-93). He alleged disability since January 13, 1993, based on left ulnar palsy; cervical, lumbar, and

1    thoracic disc protrusions; spondylosis; left leg numbness; and severe headaches (Tr. 111). His application

2    was denied initially (Tr. 31-34) and upon reconsideration (Tr. 37-39).  Although Plaintiff alleged disability

3    since January 1993, he is ineligible for SSI disability benefits for any month including and preceding June

4    2000, the month he filed his SSI disability benefits application.  20 C.F.R. §§ 416.330, 416.335.

5          An administrative law judge (ALJ) conducted a hearing on September 17, 2002, at which she heard

6    testimony from three witnesses: Plaintiff; a medical expert, and a vocational expert, (Tr. 644-691). On

7    April 11, 2003, the ALJ issued a decision finding that Plaintiff could perform his past relevant work and

8    that, alternatively, there were a significant number of jobs in the national economy that Plaintiff could

9    perform in light of his residual functional capacity (Tr. 19-28). Therefore, she found Plaintiff not disabled

10   within the meaning of the Social Security Act. 42 U.S.C. § 1382c(a)(3)(A).  The Appeals Council denied

11   Plaintiff's request for review on November 1, 2005, making the ALJ's decision the Commissioner's final

12   decision. 20 C.F.R. § 416.1481, 422.210.

13         Plaintiff raises several issues in his opening brief.  After carefully reviewing the parties' arguments

14   and the administrative record, the undersigned agrees with Plaintiff's contention that the ALJ failed to

15   properly consider his mental impairments as "severe" impairments.  Having concluded that the ALJ erred in

16   the consideration of Plaintiff's "severe" impairments at step-two of the five-step evaluation process.  The

17   court further concludes that it is appropriate to remand the matter to allow the administration the

18   opportunity to complete the five-step process taking Plaintiff's severe mental impairments into

19   consideration.

20                                        DISCUSSION

21         This Court must uphold the Secretary's determination that plaintiff is not disabled if the Secretary

22   applied the proper legal standard and there is substantial evidence in the record as a whole to support the

23   decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant

24   evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales,

25   402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla

26   but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

27   Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational

28   interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th

1  Cir. 1984).

2  **A.    THE ALJ ERRED WHEN SHE FAILED TO CONSIDER MR. JOHNSON'S MENTAL IMPAIRMENTS AS "SEVERE" IMPAIRMENTS**

3

4        Step-two of the administration's evaluation process requires the ALJ to determine whether an

5  impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996).  An impairment is "not severe"

6  if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a),

7  416.921(a).  The Social Security Regulations and Rulings, as well as case law applying them, discuss the

8  step-two severity determination in terms of what is "not severe."  According to the Commissioner's

9  regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to

10  do basic work activities,"  20 C.F.R. §§ 404.1520(c),  404.1521(a)(1991).  Basic work activities are

11  "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting,

12  pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b);  Social Security Ruling 85- 28

13  ("SSR 85-28").  An impairment or combination of impairments can be found "not severe" **only** if the

14  evidence establishes a slight abnormality that has "no more than a minimal effect on an individuals ability to

15  work." *See* SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1998) (adopting SSR

16  85-28)(emphasis added).

17        Here, the ALJ stated:

18        I do not find that the claimant has a severe mental impairment.  DDS reviewer, Charles
       Regets, Ph.D., took a look at the claimant's file in August, 2000, and noted that he had a
19       mood disturbance that did not affect cognitive and social processing at a marked level
       (exhibit 10F:2).  He thought that the claimant had only slight limitations in functioning, and
20       there was insufficient evidence of any decompensation (exhibit 10F:8).  He concluded that
       the claimant's mood disorder was not a severe impairment (exhibit 10F:1).  Another DDS
21       reviewer, Anita Peterson, Ph.D., agreed with that assessment (exhibit 10F:1).  While Dr.
       Neims suggests severe limitations, other evidence suggests that he has no limitations from a
22       mental impairment.  The claimant was in treatment for a mild depression, but his doctor
       noted that he responded well to treatment.  The claimant has not been compliant with
23       medication or treatment.  He voluntarily stopped his medication and then reported an
       increase in anxiety and depression.  Dr. Delyanis and Dr. Neims both commented on this
24       lack of motivation is secondary gain.  Dr. Golden estimated the claimant's GAF at 80,
       suggesting only light and transient limitations and did not diagnose a mental impairment.
25       The claimant was able to pass classes when he participated in vocational rehabilitation
       training during the time that he alleges disability, and this involved attending five hours of
26       classes five days a week.  The claimant is able to care for his daughter and his home without
       limitation.  For all these reasons I find that the claimant has no severe mental limitations.

27

28  Tr. 26.

In contrast to the ALJ's evaluation, the relevant medical evidence clearly supports a severe mental impairment.  It is important to restate that Plaintiff filed his application for Supplemental Security Income disability benefits on June 16, 2000.  Plaintiff is thus ineligible for benefits prior to June 2000.   The medical records since that time clearly support a severe mental impairment.

On July 5, 2000, Plaintiff underwent a DSHS psychological/psychiatric evaluation, with Daniel Neims, Psy.D. (Tr. 317-320). Plaintiff was diagnosed with mood and anxiety disorder secondary to chronic pain (Tr. 319). Dr. Neims opined that these impairments caused moderate limitations in the following categories; the ability to: exercise judgment and make decisions; interact appropriately in public contacts; respond appropriately to and to tolerate the pressures and expectations of a normal work setting; and to control physical and motor movements and maintain appropriate behavior. *Id.*

Between June 1, 2000 and September 22, 2000, Plaintiff was diagnosed by Dr. Samms with depression, stress and anxiety and concentration problems on at least six occasions and prescribed Alprazolam, Buspar, Wellbutrin and Ambien (Tr. 332-339).

On January 29, 2001, Plaintiff was examined by Dr. Young for cognitive problems (Tr. 471-473). Dr. Young noted "many cognitive skills can be severely impacted by depression and there are at least two or three notes in the chart which suggest that [Plaintiff's depression has been quite profound at times" (Tr. 472).

On February 1, 2001, Plaintiff underwent a DSHS psychological/psychiatric evaluation, with Irene Mazer, Ph.D. (Tr. 474-477). Plaintiff was diagnosed with: dysthymia; pain disorder associated with physical and psychiatric symptoms; somatoform disorder, NOS; and avoidant and dependant personality disorder with schizoid traits (Tr. 475). Dr. Mazer opined that Plaintiff's symptoms caused marked functional severity in the following categories: social withdrawal; paranoid behavior and physical complaints (Tr. 475). Dr. Mazer also opined that Plaintiff had moderate to marked limitations in the ability to exercise judgment and make decisions, and moderate limitations in the ability to: relate appropriately to coworkers and supervisors; interact appropriately in public contacts; and to respond appropriately to and tolerate the pressures and expectations of a normal work setting (Tr. 476). Dr. Mazer concluded her evaluation by noting that Plaintiff was in denial of his need for mental health treatment, making it unlikely that he would be able to accept mental health treatment (Tr. 477).

On June 28, 2001, Plaintiff underwent another psychological evaluation, with Dr. Neims (Tr. 411-419). Dr. Neims noted that Plaintiff completed a Rey 15 Factor Test "completely unindicative of negative impression management or malingering" (Tr. 413). A PAI-2 indicated that Plaintiff has particular concerns regarding physical functioning, and Dr. Neims opined that Plaintiff "demonstrates an unusual degree of concern about physical functioning and health matters and probable impairment arising from somatic symptoms" (Tr. 417). Dr. Neims diagnosed: depressive mood disorder, secondary to medical difficulties; psychological factors affecting physical condition; and a GAF of 55 (Tr. 418-419).

Between March 12, 2001 and December 10, 2001, Plaintiff received mental health treatment at Kitsap Mental Health for Adjustment Disorder with Mixed Anxiety and Depressed Mood (Tr. 497-518). Plaintiffs prescribed psychiatric medications have included: Wellbutrin (Tr. 354), Buspar (Tr. 355); Alprazolam (Tr. 355); Xanax (Tr. 363); PaxiI (Tr. 364); Zoloft (Tr. 252) Ambien (Tr. 416); and Amitriptyline.

All of the aforementioned evidence is post-June 2000, and therefore germane to the period of eligibility at stake. On the other hand, the most important evidence that the ALJ relies on to find no severe mental impairment is Dr. Golden's 1999 psychological evaluation (Tr. 184-187). Dr. Golden's report predates Plaintiffs SSI application by nearly a year, and therefore relates to a time period prior to SSI eligibility. Moreover, the medical records Dr. Golden uses to support his opinions (Tr. 184-185) are even further remote from the time period at issue. Accordingly Dr. Golden's opinion should have been granted little to no weight, when viewed in light of the evidence noted above.

Subsequent to June 2000, the only mental health opinions that find no severe mental impairment are from non-treating and non-examining mental health sources, Charles Regets, Ph.D. and Anita Peterson, Ph.D. (Tr. 402-41 0). The court notes Dr. Regets was not involved in the disability process after August 2000 (Tr. 402) and Dr. Peterson was not involved in the disability process after December 2000 (Tr. 402). Accordingly, they did not review: a January 29, 2001 evaluation and report by Sherwood Young, M.D. (Tr. 471-473); a February 1, 2001 psychiatric/psychological evaluation of Irene Mazer, Ph.D. (Tr. 474-477); a May 21, 2001, neurological evaluation with George Delyamis, M.D., which included a diagnosis of chronic depression.(Tr. 478-479); a June 28, 2001 psychological evaluation, with Daniel Neims, Psy.D. (Tr. 411-423); and nine months of mental health treatment records from Kitsap Mental

Health Services (Tr. 497-518) between March and December 2001.  Because much of the evidence supporting a severe mental impairment was submitted after Dr. Regets and Dr. Peterson reviewed the record, their opinions should not have been granted great weight.

Based on the standards noted above, Mr. Johnson presented sufficient evidence to support a finding that his mental impairments have more than a minimal effect on his ability to work.  The ALJ erred when she disregarded or discredited these medical conditions when she evaluated Mr. Johnson's  application for social security insurance benefits.

After reviewing the arguments presented, the court finds the matter should be remanded for further proceedings.  Further proceedings are necessary because there are outstanding issues that must be resolved before a finding of disability can be made, such as Mr. Johnson's residual functional capacity when the ALJ includes all of his severe impairments and Mr. Johnson's ability to possibly perform other jobs in the national economy.  On remand, plaintiff should be allowed the opportunity to raise all of his arguments presented to the court supporting his application for benefits.

<u>CONCLUSION</u>

Based on the foregoing, the court should REMAND the matter for further consideration by the administration.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **September 22, 2006**, as noted in the caption.

DATED this 30th day of August, 2006.


*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge